FILED
2013 JUN 26  PM 2 59

U.S. DISTRICT COURT
NEW HAVEN, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 3:13CR 130 (JBA) |
| v. | : |
| RICHARD SOKOLOFF | : VIOLATION:<br>: 18 U.S.C. § 1347 (Health Care Fraud) |

INFORMATION

The Acting United States Attorney charges:

COUNT ONE
(Health Care Fraud)

General Background

1. At all times relevant to this Information, the defendant RICHARD SOKOLOFF ("SOKOLOFF") was a Doctor of Podiatric Medicine, licensed to practice by the State of Connecticut.

2. At all times relevant to this Information, SOKOLOFF operated a podiatry practice at 652 Boston Post Road, Suite #4, Guilford, Connecticut.

3. Medicare is a federally funded program providing health care coverage to the nation's elderly and certain disabled individuals. The program is administered by the U. S. Department of Health and Human Services and supervised by the Centers for Medicare and Medicaid Services ("CMS"). The Medicare program pays claims submitted by participating health care providers for medical services rendered to Medicare beneficiaries. As such, Medicare constitutes a "health care benefit program" under Title 18, United States Code, Sections 24(b) and 1347.

4. At all times relevant to this Information, SOKOLOFF was a participating provider in the Medicare program. By becoming a participating provider in Medicare, enrolled

1

providers, such as SOKOLOFF, agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (namely, form CMS-1500) containing required information appropriately identifying, among other things, the provider, the beneficiary, and the services rendered.

5. An avulsion of nail plate service or "nail avulsion" (procedure codes CPT 11730 and 11732) is a surgical procedure to treat ingrown toenails. The procedure involves the surgical separation and removal of all or part of a toenail from the tip of the nail back to the eponychium (base of the nail). The procedure is typically done mechanically by separating the toenail from the nail bed, and removing or pulling off all or part of the toenail. Pursuant to relevant Medicare policies, the procedure is required to be performed using injectable anesthesia, unless the patient is devoid of sensation or there are other extenuating circumstances. Injectable anesthesia is necessary to perform a partial or full nail avulsion to avoid causing extreme pain to the patient.

The Scheme and Artifice to Defraud

6. From approximately July 2008 to approximately February 2012, SOKOLOFF knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, that is, SOKOLOFF submitted claims to Medicare for avulsion of nail plate services allegedly performed on Medicare beneficiaries, when in truth and in fact, no such services were rendered.

Purpose of the Scheme and Artifice

7. It was the purpose of the scheme and artifice for SOKOLOFF to unlawfully enrich

himself through the submission of false and fraudulent claims to Medicare for avulsion of nail plate services that were not provided to the Medicare beneficiaries.

The Manner and Means of the Scheme

8. In furtherance of the scheme, SOKOLOFF commonly provided only "routine foot care" services to his Medicare patients, such as simply trimming or clipping their toenails, yet he regularly submitted claims to Medicare as if he had performed nail avulsion surgical procedures. Routine foot care is typically not a payable service under relevant Medicare regulations, except in limited circumstances for patients with certain systemic conditions or other significant medical issues. Although he was supposedly providing nail avulsion services, SOKOLOFF did not commonly utilize injectable anesthetic.

9. In furtherance of the scheme, SOKOLOFF submitted claims for multiple avulsion of nail plate procedures for the same patient on the same date of service (i.e., for multiple toes), even though he had only provided routine foot care, such as clipping or trimming the patients' nails, on the dates in question.

10. It was also part of the scheme that SOKOLOFF created and back-dated patient progress notes when Medicare requested that he provide documentation to substantiate his claims for avulsion of nail plate services. SOKOLOFF made it appear on those notes that the avulsion of nail plate services had been performed, when, in fact, they had not been performed.

11. As a result of the scheme, SOKOLOFF received $213,676 in payments from Medicare that he was not entitled to because Medicare, relying on SOKOLOFF's fraudulent representations, paid the claims that SOKOLOFF submitted and caused to be submitted.

Execution of the Scheme

12. On or about June 14, 2011, in the District of Connecticut and elsewhere, SOKOLOFF did knowingly and willfully execute and attempt to execute the scheme and artifice to defraud Medicare by submitting and causing to be submitted a claim to Medicare for an avulsion of nail plate service, claim number 071171007360, pursuant to CPT code 11730, allegedly performed on patient "H.G.", which was paid in the amount of $83.38, on or about July 19, 2011, when in truth and in fact, as SOKOLOFF well knew, no such service had been provided.

In violation of Title 18, United States Code, Section 1347.

UNITED STATES OF AMERICA

_[signature]_
DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

_[signature]_
RICHARD M. MOLOT
ASSISTANT UNITED STATES ATTORNEY